**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

Scura, Wigfield, Heyer,
Stevens & Cammarota, LLP
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Telephone: 973-696-8391
dstevens@scura.com
David L. Stevens
*Counsel for Debtor*

| | |
|---|---|
| In re: | Case No. 18-24461 |
| **Tosca Kinchelow-Schmidt**, | Chapter 11 |
| Debtor. | Hon. Judge: Rosemary Gambardella |

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DESCRIBING THE REORGANIZATION CHAPTER 11 PLAN PROPOSED BY THE DEBTOR

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS ORIGINAL PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

**PROPONENT:**

/s/ Tosca Kinchelow-Schmidt
Tosca Kinchelow-Schmidt
Chapter 11 Debtor

Dated: December 15, 2019

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………..    1

I.      BACKGROUND OF THE DEBTOR…………………………………………    7
1.1     Filing of the Debtor's Chapter 11 Case…………………………………….....    7
1.2     Nature of the Debtor's Employment……………………………………….......    7
1.3     Debtor's Assets………………………………………………………………......    8
1.4     Debtor's Liabilities…………………………………………………………........    8
1.5     Current and Historical Conditions…………………………………………….    8
1.6     Events Leading to the Filing of the Bankruptcy Case…………………………    8
1.7     Significant Events During the Bankruptcy Case………………………….............    8
1.8     Projected Recovery of Avoidable Transfers…………………………………....    9
1.9     Procedures Implemented to Resolve Financial Problems……………………….....    9

II.     SUMMARY OF THE PLAN OF REORGANIZATION………………………….....    9
2.1     Unclassified Claims…………………..…………………………………….……...    10
        A.      Administrative Expenses…………..…………………………………....    10
        B.      Priority Tax Claims…………………..……………................................    12
2.2     Classes of Claims…………………………………………………………….......    12
2.3     Means for Implementation of the Plan……………………………………............    15
2.4     Post Confirmation Management…………………………………………………..    15
2.5     Disbursing Agent…………………………………………………………............    15
2.6     Other Provisions of the Plan………..……………………………………............    16
2.7     Tax Consequences of Plan…………………………………………….................    17
2.8     Risk Factor/Mitigating Factors………………………………………………....    17

III.    CONFIRMATION REQUIREMENTS AND PROCEDURES………………….........    18
3.1     Who May Vote or Object      …………………………………………………….    18
3.2     Liquidation Analysis…………………………………………………………    20
3.3     Feasibility………..…………………………………………………………………    21

IV.     EFFECT OF CONFIRMATION OF PLAN…………………………………….....    21
4.1     Discharge……………………………………………………………………    21
4.2     Revesting of Property in the Debtor…………………………………………… ……    21
4.3     Modification of Plan…………………..……………………….................................    22
4.4     Post-Confirmation Dismissal…………..……………………….................................    22

V.      ATTACHMENTS…………………………………………………………………    22

VI.     FREQUENTLY ASKED QUESTIONS………………………………………….....    22

VII.    DEFINITIONS……………………..…………………………………………….....    24

## INTRODUCTION

Tosca Kinchelow-Schmidt (the "Debtor") is the debtor in the captioned Chapter 11 bankruptcy case.  On July 19, 2018, the Debtor commenced a bankruptcy case by filing a voluntary bankruptcy petition under Title 11, Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") to stop a foreclosure sale pertaining to her primary residence. The Debtor commenced this case *pro se* and without the advice of counsel. Her intention was to retain the home and was unaware that Chapter 7 does not present the same opportunity to resolve delinquencies as a Chapter 11. Thus, her case was converted to a Chapter 11 on October 3, 2018.

Chapter 11 of the Bankruptcy Code allows the Debtor, and under some circumstances, creditors and other parties in interest, to propose a Chapter 11 Plan of Reorganization (the "Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Plan, sent to you, in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN.  THE PLAN IS ANNEXED HERETO AS **EXHIBIT "A"**.

This is a reorganization plan.  The Effective Date of the proposed Plan is thirty days after entry of the order confirming the Plan unless the Plan or confirmation order provides otherwise[1].

### A.  Purpose of This Document

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

---

[1] D.N.J. LBR 3020-1. Chapter 11 Plan Effective Date

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    1)    **WHO CAN VOTE OR OBJECT,**

    2)    **THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

    3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

    4)    **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

    5)    **THE EFFECT OF CONFIRMATION, AND**

    6)    **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in Code Section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor

to make an informed judgment about accepting or rejecting the Plan.  The Bankruptcy Court (the "Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

### B.  Confirmation Procedures

<u>Persons Potentially Eligible to Vote on the Plan</u>

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.  All shareholders of record as of the date of approval of this Disclosure Statement may vote on the Plan.  The Ballot Form that you received does not constitute a proof of claim.  If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's petition schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: United States Bankruptcy Court, U.S. Court House, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.  The Clerk of the Bankruptcy Court will not provide this information by telephone.

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. AS A RESULT, THE TERMS OF THE PLAN ARE NOT**

**YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

**1.  Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, at _____ {A.M./P.M.}, in the Courtroom of the Honorable Rosemary Gambardella, United States Bankruptcy Court, 50 Walnut Street, Newark, New Jersey.

**2.  Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Attn: Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, c/o David L. Stevens, 1599 Hamburg Turnpike, Wayne, NJ 07470 (Counsel for the Debtor).

Your ballot must be received by _____, 2020 at 5:00 p.m.. E.S.T. or it will not be counted.

**3.  Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, c/o David L. Stevens, 1599 Hamburg Turnpike, Wayne, NJ 07470 (Counsel for the Debtor) by _____, **2020 at 5:00 p.m.**.

**4.  Identity of Person to Contact for More Information Regarding the Plan**

Any interested party, desiring further information about the Plan, should contact Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, c/o David L. Stevens, 1599 Hamburg Turnpike, Wayne, NJ 07470 (Counsel for the Debtor).

**C. Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records. The information contained in this Disclosure Statement is provided by the Debtor. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

## ARTICLE 1
## BACKGROUND OF THE DEBTOR.

### 1.1    Filing of the Debtor's Chapter 11 Case.

On July 19, 2018, the Debtor filed a *pro se* bankruptcy petition under Title 11, Chapter 7 of the Bankruptcy Code to stop a foreclosure sale pertaining to her Property. Her intention was to retain the home. The amount owed to the mortgage holder exceeded the jurisdictional debt limit for Chapter 13, and thus her case was converted to a Chapter 11 on October 3, 2018. This Chapter 11 case is pending in the United States Bankruptcy Court for the District of New Jersey.

### 1.2    Nature of the Debtor's Employment.

The Debtor is a physician employed as an independent contract by the Veterans Affairs Health Administration. The Debtor also collects social security and pension income. The Debtor's position and employment is not expected to change during the course of this Plan. The Debtor's income is anticipated to adjust only nominally during the life of the Plan.

### 1.3    Debtor's Assets.

The Debtor's real and personal property, including the determination of values, are identified on the Debtor's Schedules A and B of the petition and are attached hereto as **Exhibit "B"**.

### 1.4    Debtor's Liabilities

Debtor's Liabilities are evidenced by Debtor's Schedules D, E, and F of the petition and are attached hereto as **Exhibit "C"**.

### 1.5    Current and Historical Financial Conditions.

The Debtor's operating reports for the last three months reflect the Debtor's average income and expenses during the pendency of this case annexed hereto as **Exhibit "F"**. Her historical income has remained constant for each of the last five-years. Filed federal tax returns are available for review.  Contact Debtor's counsel if review of filed returns is requested.

### 1.6    Events Leading to the Filing of the Bankruptcy Case.

The Debtor disputed the validity and extent of the mortgage loan secured by her residence. The mortgage loan was a negative-amortizing loan which the Debtor asserts was not disclosed to her prior to closing. The Debtor asserts that the amount claimed due is inaccurate and that the alleged note holder cannot evidence possession of the original note. Notwithstanding the Debtor's defenses and objections to the mortgage note, a final judgment in foreclosure was entered in the state court foreclosure proceeding and a sheriff sale was scheduled.

This case was originally filed as a *pro se* chapter 7 case on the eve of the sheriff sale. After retaining counsel, the Debtor moved for conversion to chapter 11 and an order converting this case was entered on October 3, 2018. The Debtor made a settlement proposal to the mortgage holder which remains under review.  The mortgage holder has requested an inspection of the property and the Debtor has made herself available to facilitate the inspection.

### 1.7    Significant Events During the Bankruptcy Case.

1) On July 19, 2018, the Debtor filed a *pro se* Chapter 7 bankruptcy.
2) On October 3, 2018, the Court entered an order converting the Debtor's case to a case under Chapter 11 of the Bankruptcy Code.
3) On October 5, 2018, the Office of the United States Trustee held the 341A Meeting of Creditors.
4) On October 29, 2018, the Court entered an order granting Debtor's application to employ Scura, Wigfield, Heyer, Stevens & Cammarota, LLP as bankruptcy counsel (Docket Entry No. 44).
5) On October 29, 2018, the Court entered an order granting the Debtor's application to employ Ian M. Nelson, CPA, LLC as the Debtor's accountant (Docket Entry No. 45).
6) On November 7, 2018, the Court entered an order authorizing Scura, Wigfield, Heyer, Stevens & Cammarota, LLP to substitute into the Debtor's case as bankruptcy counsel.
7) On November 7, 2018, the Court entered an order authorizing Richard A. Grodeck, Esq. as the Debtor's malpractice attorney.
8) On June 24, 2019, the Court entered an order directing the Debtor to file her Chapter 11 Plan of Reorganization by September 17, 2019

9) On September 17, 2019, the Court entered an order extending the time for the Debtor to file her Chapter 11 Plan of Reorganization to October 15, 2019

10) On October 17, 2019 the Debtor filed a 3rd application to extend the time to file her Chapter 11 Plan of Reorganization by December 15, 2019.

11) On November 13, 2019 the Office of the US Trustee filed a response to the Debtor's application to extend the time for the Debtor to file Chapter 11 Plan of Reorganization by December 15, 2019. In its response, the Office of the Trustee stated that it would agree to the extension subject to the condition that the final deadline for the submission of the Debtor's Chapter 11 Plan is scheduled for December 15, 2019.

**1.8     Projected Recovery of Avoidable Transfers**

The Debtor investigated possible preference actions against creditors who may have received payments within the 90-day period prior to the Petition Date. After investigation there were no prospective claims identified.

**1.9     Procedures Implemented to Resolve Financial Problems**

In an effort to remedy the problems that led to the bankruptcy filing, the Debtor intends to remain gainfully employed. Finally, the Debtor intends to sell the Property which would eliminate a high mortgage payment and the high expenses associated with the maintenance of the Property.

## ARTICLE 2
## SUMMARY OF THE PLAN OF REORGANIZATION.

The Debtor's Plan must describe how its creditors will be paid. Certain claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses are not classified.

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. A claim can be impaired if the Plan alters the legal, equitable, or contractual rights to which the holder of the claim is otherwise entitled. If the Plan is confirmed, each creditor's recovery is limited to the amount provided in the Plan.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

All injunctions or stays provided for in the bankruptcy pursuant to §§ 105 and 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date, unless otherwise provided in the Plan.

### 2.1    Unclassified Claims.

Certain types of claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered to be impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Expense is allows by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor receives goods or services in the ordinary course following her filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the good or services provided. This debt incurred by the Debtor after Petition Date will be paid on an ongoing basis in accordance with the ordinary practices and terms between the Debtor and her Creditors.

2. If the Debtor received goods, in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

The following chart lists the Debtor's estimated Administrative Expenses (excluding fees and expenses owed to professionals retained by the Debtor during the course of her bankruptcy proceedings), and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in full on the Effective Date, or according to the terms of the obligation, if later. |
| The value of goods received in the ordinary | $0.00 | Paid in full on the Effective Date, or according to the terms |

| | | |
|---|---|---|
| course of business within 20 days before the Petition Date | | of the obligation, if later. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date |
| United States Trustee Fees[2] | $325.00 | Paid in full on the Effective Date. |
| **TOTAL** | $325.00 | |

3.        Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment

The following chart lists the Debtor's estimated fees and expenses owed to professionals, and their proposed treatment under the Plan:

| Name/Role of Professional | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Scura, Wigfield, Heyer, Stevens & Cammarota, LLP 1599 Hamburg Turnpike Wayne, NJ 07470 | $10,000.00 | Paid in full on the Effective Date, or according to the terms of a separate written agreement. |
| Piro, Zinna, Cifelli, Paris & Genitempo, LLC | $5,000.00 | Paid in full on the Effective Date, or according to the terms of a separate written agreement. |
| **TOTAL** | $15,000.00 | |

**Court Approval of Professional Compensation Required:**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed.  The professional in question must file and serve a properly noticed fee application for compensation

---

[2]        All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date

11

and reimbursement of expenses and the Court must rule on the application.  Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan.  Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged.  Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety days of the Effective Date of the Plan, or such administrative claim shall be deemed forever barred and discharged.  No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee.  Such fees are determined by statute.

As indicated above, the Debtor will need to pay the administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### B.    Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid [with interest as determined by applicable non-bankruptcy law] over a period not exceeding 5 years from the order of relief.

| Name Of Government Entity with a Tax Claim | Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Internal Revenue Service | $8,159.99 | The holder of this claim shall be paid in the amount of its Allowed Priority Tax Claim including interest calculated at 5% interest per annum.<br><br>As evidenced by Exhibit D (Funds on Hand), the Debtor has, in its debtor-in-possession bank account, enough funds on hand to pay all unsecured claims in full. Therefore, the Debtor shall pay all Allowed Unsecured Claims in full on the Effective Date from the funds held in the Debtor's debtor-in-possession bank account |

### 2.2    Classes of Claims

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.    Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim; provided, however, that the Debtor may modify a claim secured by a security interest in real property that is his or her principle residence.

Secured Claims are subject to the following treatment:

**Collateral to be Surrendered:** The Debtor will surrender the collateral securing the Secured Creditor's Claim on the Effective Date of the Plan. The Confirmation Order shall constitute an order granting relief from the automatic stay permitting the Secured Creditor to possess and dispose of their collateral. Any secured claim is deemed satisfied in full through surrender of the collateral. Any deficiency claim is a general unsecured claim. A Class of secured claims receiving this treatment is not impaired and is not entitled to vote on confirmation of the Plan.

**Rights Unaltered:** The Debtor will leave unaltered the Secured Creditor's contractual, legal, and equitable rights with respect to its collateral. A Class of secured claims receiving this treatment is unimpaired and is not entitled to vote on confirmation of the Plan.

**Continue Regular Monthly Payment and Pay Arrears Over Time:** The Debtor will pay the entire amount due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys' fees and late charges) with interest. Secured Creditors in a Class receiving this treatment may not possess or dispose of their collateral so as long as the Debtor is not in material default in performing her obligations under that Plan. A Class of secured claims receiving this treatment is impaired and is entitled to vote on confirmation of the Plan.

**Pay Amount Due in Full Over Time:** The Debtor will pay the entire amount with due interest through equal monthly payments. Secured Creditors in a class receiving this treatment may not possess or dispose of their collateral so long as the Debtor is not in material default in performing her obligation under the Plan. A Class of secured claims receiving this treatment is impaired and is entitled to vote on confirmation of the Plan.

**Pay Value of Collateral Over Time:** The Debtor will pay the amount of the underlying debt that is equal to the value of the collateral. The Debtor will pay this amount with interest from the Effective Debt of the plan through equal monthly payments.

13

If a lienholder disputes the value of the collateral asserted by the debtor, such lienholder must timely file an objection to confirmation, or the value stated by the Debtor will be determined to be the value of the collateral. Such objection shall be accompanied by competent evidence of value, which need not include an appraisal. If the value of the collateral is disputed, the Bankruptcy Court, after consultation with the parties, will schedule a hearing for a determination of value of the collateral.

Secured Creditors in a Class receiving this treatment may not possess or dispose of their collateral so long as the director is not in material default in performing her obligations under the Plan. A Class of secured claims receiving this treatment is impaired and entitled to vote on confirmation of the plan.

1.    **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following lists all classes of creditors containing the holders of the Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | Class One consists of a Secured Claim held by the Selene Finance, L.P. ("Selene"), as Trustee for MTGLQ Investors, L.P. c/o SN Servicing Corp. This claim is secured by the real property located at 471 E. Saddle River, Road., Ridgewood, NJ (the "Ridgewood Property"). This creditor has a scheduled claim in the secured amount of $1,359,787.77. | Yes | The Debtor shall motion for sale of the Ridgewood Property within 12 months of the Effective Date. The Class One claim holder shall be paid its allowed secured claim at closing from the sale proceeds in full satisfaction of its secured and, if applicable, unsecured deficiency claim. |

2.    **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  These claims are to be treated as follows:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | Class Two are holders of General Unsecured Claims, including allowed deficiency claims of creditors in prior classes and the claims of creditors not otherwise classified under the Plan (the "Allowed Unsecured Claims"). The scheduled amount of undisputed general unsecured claims is $29,053.61. | Yes | As evidenced by Exhibit D (Funds on Hand) & Exhibit F (Current and Historical Financial Information), the Debtor has, in its debtor-in-possession bank account, enough funds on hand to pay all unsecured claims in full. Therefore, the Debtor shall pay all Allowed Unsecured Claims in full on the Effective Date from the funds held in the Debtor's debtor-in-possession bank account. |

**2.      Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | This Class consists of the ownership interest of the Debtor in her respective assets, which are not otherwise abandoned pursuant to the Plan. | No | Rights Unaltered<br><br>All secured and unsecured creditors are unimpaired by the terms of the Plan. Therefore, the ownership interests of the Debtor in her assets shall not be altered as a consequence of the Plan. |

### 2.3 **Means of Effectuating the Plan**

The Plan will be funded from (i) funds on hand in the estate at the time of Confirmation; and (ii) sale proceeds stemming from the sale of the Ridgewood Property.

### 2.4 **Post Confirmation Management.**

The Debtor will manage her own financial affairs.

### 2.5 **Disbursing Agent.**

The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.

**2.6 Other Provisions of the Plan**

**a.  Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If, and when, a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

The Debtor has reviewed all proofs of claims. Debtor does not object to any claim at this time but shall retain the right to dispute any proof of claim filed.

**b.  Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding her Executory Contracts (which include its unexpired leases) and the impact such intentions would have on other parties to the contracts.

All executory contracts and unexpired leases which have not already been either assumed or rejected by order of this Court or listed in this Plan will be conclusively deemed to have been rejected upon the entry of the order confirming the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS FIXED BY D.N.J. LBR 3003-1(b).**  Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**c.  Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without

jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized debtor elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**2.7 Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally speaking, a holder of a Claim which is subject to taxation in the United States (a "Taxpayer-Claimant") will realize income or loss for federal and state income tax purposes if its Claim is paid, unless such income or loss has previously been recognized, to the extent that such a payment would have created income or loss if paid by the Debtor outside the jurisdiction of the Bankruptcy Court.

A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its Claim will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the Claim exceeds its recovery, except to the extent that a loss with respect to such Claim has previously been recognized.

There are complex issues which arise whenever debt is not paid in full, and only a limited summary of the rules can be given here. Taxpayer-Claimants should consult with their own tax advisors as to the impact of these rules on their particular situation.

**2.8      Risk Factor/Mitigating Factors**

This plan is subject to, but not necessarily limited to, the following risks:

a) The Debtor will become unemployed before this plan has been consummated.
b) The Debtor will die before this plan has been consummated.

# ARTICLE 3
# CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and that the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### 3.1    <u>Who May Vote or Object</u>

#### i.    **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

#### ii.    **Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

##### a.    **What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS:  **<u>February 5, 2019 (except for governmental units).</u>**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and

(2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.   What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that Classes One and Two are unimpaired and that holders of these claims in each of these classes do not have the right to vote to accept or reject the Plan.  Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### c.   Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### d.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### e.   Votes Necessary to Confirm Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Article (3.A.g.).

### f. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (b) in dollar amount of the allowed claims that actually voted, have voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the allowed interest-holders of such class which actually voted, have voted to accept the Plan.

### g. Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown". The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. '1129(b) and applicable case law.

### h. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Proponent of this Plan asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

### 3.2   Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors, with the same priority, share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as

such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met.

### 3.3    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, This means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first, considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Debtor maintains that this aspect of feasibility is satisfied as.

The second, considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. Here, the Debtor shall sell the Ridgewood Property within ninety (90) days from the Effective Date, thereby satisfying the allowed secured claims. As illustrated in **Exhibit "D"** attached hereto, the Debtor has cash on hand to satisfy all scheduled and filed unsecured creditors.


### ARTICLE 4
### EFFECT OF CONFIRMATION OF PLAN

### 4.1    Discharge

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 4.2    Revesting of Property in the Debtor

Except as provided in the Plan, the Confirmation of the Plan revests all of the property of the estate in the Debtor.


### 4.3    Modification of Plan

The Proponent may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if Proponent modifies the plan before confirmation. The Proponent may also seek to modify the Plan at any time after

confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. Proponent further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

### 4.4    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

## ARTICLE 5
## ATTACHMENTS

The following documents accompany the Disclosure Statement [check those applicable, and list any other attachments here]:

[x]    Debtor's Chapter 11 Plan of Reorganization, annexed as Exhibit A.
[x]    Debtor's Schedules A/B, annexed as Exhibit B.
[x]    Debtor's Schedules D, E, and F, annexed as Exhibit C.
[x]    Debtor's Cash on Hand on the Effective Date, annexed as Exhibit D.
[x]    Current and Historical Financial Conditions, annexed as Exhibit F.

## ARTICLE 6
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmations of al plan however, a debtor may propose a liquidating plan under Chapter 11. The plan is legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Plan and Disclosure Statement?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, the size of the class, and what you will receive if the Plan is confirmed?    Section Two, Paragraph Two lists all classes of claimants and their types of claims.

**Why Is the Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of his creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, votes in favor of the Plan amounting to two-thirds in total dollar amount and a majority in the amount of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan the creditors are shown.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the late date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration, and approval. The deadline by

which ballots must be returned is (To be determined by the Court). Ballots should be mailed to the following address:

David L. Stevens, Esq.
Scura, Wigfield, Heyer & Stevens LLP
1599 Hamburg Turnpike
Wayne, New Jersey 07470

**How Do I Determine When and How Much I Will be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the plan.

# ARTICLE 7
## DEFINITIONS

**7.1**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or constructed in the Code are used in this Plan. The definitions that follow, that are found in the Code, are for convenience of reference only, and are superseded by the definitions found in the code.

**7.2**     **Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**7.3**     **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**7.4**     **Administrative Expense:** Any cost or expense of administration of the Chapter 11case entitled to priority under Section 507(a)(2) of Code and allowed under section 503(b) of the Code, including without limitation, any actual necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code.

**7.5**     **Administrative Tax Claim:** Any tax incurred pursuant to Section 503(b)(1)(B) of the Code

**7.6**     **Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party

interest, including the Debtor, does not timely file an objection or (ii) is allowed by a Final Order.

**7.7     Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**7.8     Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**7.9     Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**7.10     Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**7.11     Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**7.12     Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**7.13     Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**7.14     Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which Tosca Kinchelow-Schmidt is the Debtor-in-Possession.

**7.15     Claim:** Any "right to payment from the Debtor whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

**7.16     Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**7.17    Committee:** Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**7.18    Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan and Disclosure Statement.

**7.19    Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plans is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**7.20    Confirmation Hearing:** The hearing to be held on a date to be provided by the Court to consider confirmation of the Plan.

**7.21    Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**7.22    Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**7.23    Debtor** and **Debtor-in-Possession:** Tosca Kinchelow-Schmidt is the Debtor and the Debtor-in-Possession in this Chapter 11 Case.

**7.24    Disclosure Statement:** The Disclosure Statement served by the Plan Proponent in connection with this Plan.

**7.25    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**7.26    Distributions:** The property required by the plan to be distributed to the holders of Allowed Claims.

**7.27    Effective Date:** The Effective Date of the proposed Plan is thirty days after entry of the order confirming the Plan unless the Plan or confirmation order provides otherwise. See, D.N.J. LBR 3020-1.

**7.28    Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**7.29    Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which (a) any appeal that has been taken has

been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**7.30    IRC:** The Internal Revenue Code.

**7.31    Petition Date:** July 19, 2018 is the date the Chapter 7 petition for relief was filed. On October 3, 2018, the Court entered an order authorizing the conversion of the Debtor's case to a Chapter 11.

**7.32    Plan** This Disclosure Statement and Chapter 11 Plan may be altered, amended, or modified from time to time.

`    **7.33    Plan Proponent:**  The individual or entity that has filed this Plan and Disclosure Statement.

**7.34    Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**7.35    Reorganized Debtor:** The Debtor after the Effective Date.

**7.36    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**7.37    Secured Creditor:** Any Creditor that holds a Claim that is secured by property of the Debtor.

**7.38    Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Date: December 15, 2019                     /s/ Tosca Kinchelow-Schmidt
                                            Tosca Kinchelow-Schmidt

27